UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KIERAN O'HARA, on behalf of himself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>DIAGEO-GUINNESS, USA, INC.; & DIAGEO NORTH AMERICA, INC.<br><br>Defendants. | Civil Action No. 1:15-cv-14139-MLW |

**JOINT SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFF'S ASSENTED-TO MOTION FOR FINAL APPROVAL
OF THE PROPOSED CLASS ACTION SETTLEMENT**

Plaintiff Kieran O'Hara and Diageo Beer Company USA, Inc. & Diageo North America, Inc. ("Defendants") (collectively, the "Parties") submit this Supplemental Memorandum in Support of Plaintiff's Assented-to Motion for Final Approval of the Proposed Class Action Settlement, as directed by the Court's Order of October 7, 2021, ECF No. 161.

### I.   BACKGROUND

On June 1, 2021, the Parties submitted an initial settlement agreement with Plaintiff's Memorandum in Support of His Assented-to Motion for Preliminary Approval of the Proposed Class Action Settlement. *See* ECF No. 142. The Court held a hearing on Plaintiff's Motion for Preliminary Approval on June 9, 2021, and subsequently ordered the Parties to supplement their submissions in support of Plaintiff's Assented-to Motion for Preliminary Approval of the Proposed Class Action Settlement. *See* ECF No. 144. The Parties conferred, and Plaintiff submitted a Supplemental Memorandum in Support of His Assented-to Motion for Preliminary Approval of

1

the Proposed Class Action Settlement, ECF No. 147, and a First Revised Settlement Agreement and Release (the "Settlement Agreement") (ECF No. 147-2) on June 18, 2021.

In Section 7.1 of the Settlement Agreement, Class Counsel agreed that they would apply to the Court for an award of attorneys' fees, costs and expenses, including expert fees, no greater than $1.5 million, and Defendants agreed not to oppose or undermine the application or solicit others to do so.

On August 30, 2021, Class Counsel applied for an award of attorneys' fees and costs in the amount of $1,384,195.16. *See* ECF No. 155. The fee award to be determined by the Court was to be the total obligation of Defendants for any of the Settlement Class's and Class Counsel's attorneys' fees, costs, and/or expenses of any kind. *See* Section 7.4.[1]

The Parties engaged leading class action notice and administration expert Kroll Settlement Administration to execute the approved Notice Program. *See* Declaration of Jeanne Finegan (ECF No. 157-3). The Notice Program employed best-in-class tools and technology (exceeding original projections of 74%) to reach an estimated 80 percent of targeted Settlement Class Members in Massachusetts, on average, four (4) times, with over 15,915,000 impressions served through online display, search, social impressions. *Id.* ¶ 4.

Only seven (7) timely Opt-Out/Exclusion Requests and zero (0) Objections to the Settlement were received in this case. As of October 19, 2021, the Settlement Administrator had received more than 23,060 claims totaling $176,808.00. The Claims Period is open until October 26, 2021.

---

[1] The Parties also agreed, in a separate section, that Class Counsel would petition the Court for, and Defendants would not oppose, a Service Award to the Settlement Class Representative, Kieran O'Hara, in the amount of $7,500.00. *See* Settlement Agreement, Section 6.

Plaintiff subsequently submitted his Assented-to Motion for Final Approval of the Proposed Class Action Settlement on September 27, 2021. *See* ECF Nos. 156, 157.

On October 7, 2021, the Court held a hearing on Plaintiff's Motion for Final Approval and ordered the Parties to confer and submit further briefing on certain issues—including possible revisions of the proposed Settlement Agreement, distribution of funds to a *cy pres* (a charitable distribution), and/or appointment of an amicus. *See* ECF Nos. 160, 161. The Parties conferred on the issues identified by the Court and agreed upon amended terms of the Settlement Agreement. *See* Supplemental Agreement Amending the First Revised Settlement Agreement and Release ("Supplemental Agreement") (attached as **Exhibit A**).

As stated in the Supplemental Agreement, each side has agreed to revise pertinent sections relating to the payment of attorneys' fees and costs in order to create an additional *cy pres* award. Accordingly, Class Counsel has agreed to reduce their request for attorneys' fees and costs to a collective amount of $1,150,000.00 (inclusive of attorneys' fees, costs, and expenses, but excluding the Service Award).

Defendants have agreed to pay the difference between $1.5 million they had agreed to pay in fees and costs and the amount actually awarded by the Court for attorneys' fees and costs, to be distributed as a *cy pres* award. As such, the amount available for a *cy pres* award would total at least $350,000.00.

The Parties propose that the *cy pres* award be distributed equally between: (1) the National Consumer Law Center (NCLC) in Boston, Massachusetts; and (2) Mothers Against Drunk Driving (MADD). Thus, the Parties propose the direct distribution of the *cy pres* fund to each designated non-profit in the amount of at least $175,000.00. To the extent that either proposed *cy pres*

recipient is not approved by the Court, the Parties propose that the award be distributed to the remaining *cy pres* recipient in full.

The proposed *cy pres* award is substantial and will benefit members of the Settlement Class, just as the direct relief offered through the claims process will benefit the Class. While Defendants express no opinion as to the reasonableness of the requested attorneys' fees, the Court should grant final approval to all monetary terms as laid out in the Settlement Agreement and Supplemental Agreement.

Because the Parties have now agreed to revise the Settlement Agreement in a way that reduces the request for attorneys' fees and allows for a significant *cy pres* distribution, the Court need not appoint an amicus to further address these issues.

Finally, because the actual compensation and relief to be issued to the Settlement Class has not changed with these proposals, no additional Notice is necessary.

## II.   ANALYSIS

### A.   The Proposed *Cy Pres* is Appropriate

Under the *cy pres* doctrine, the Court may "distribute class funds to a 'next-best' recipient. In such cases, the court, guided by the parties' original purpose, directs that the unclaimed funds be distributed for the prospective benefit of the class." *In re Am. Tower Corp. Sec. Litig.*, 648 F. Supp. 2d 223, 225 (D. Mass. 2009) (internal citations omitted).

The First Circuit has adopted the "reasonable approximation" test to determine the propriety of designated recipients of *cy pres* distributions. *In re Lupron Mktg. & Sales Pracs. Litig.*, 677 F.3d 21, 33 (1st Cir. 2012). Under this test, "when feasible, the recipients should be those 'whose interests reasonably approximate those being pursued by the class.'" *Id.* (citing Am. Law Inst. Principles § 3.07(c)). To determine reasonable approximation, the court considers "a

number of factors, which are not exclusive. These include the purposes of the underlying statutes claimed to have been violated, the nature of the injury to the class members, the characteristics and interests of the class members, the geographical scope of the class, the reasons why the settlement funds have gone unclaimed, and the closeness of the fit between the class and the *cy pres* recipient." *Id.*

      **i.**      **National Consumer Law Center**

The NCLC is an appropriate recipient in this case. The NCLC is a nonprofit organization headquartered in Boston, Massachusetts. Since 1969, the NCLC has spearheaded the expansion of consumer law and worked for consumer justice and economic security for low-income and disadvantaged people. *See* NCLC Overview, https://www.nclc.org/about-us/about-us.html (last visited Oct. 16, 2021).

Like here, many courts have approved consumer advocacy organizations in cases alleging false advertising, mislabeling, and other unfair and deceptive business practices. *See, e.g.*, *Koller v. Med Foods, Inc.*, No. 3:14-CV-2400-RS, 2018 WL 9619436, at *5 (N.D. Cal. Aug. 29, 2018) (approving a *cy pres* distribution to the Consumers Union and the Center for Food Safety in case challenging the marketing of olive oil); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) ("The court finds that NCLC's work with respect to consumer protection and unfair and deceptive acts and practices provides the requisite nexus to the interests of the class members, the nature of their claims, and the purpose of the underlying statutes, and thus qualifies as the next best distribution to the class."); *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *8–9 (N.D. Cal. Feb. 20, 2015) (approving *cy pres* to NCLC); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, *10 (N.D. Cal. Dec. 17, 2015) (same); *Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (same);

*Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, *3 (C.D. Cal. June 17, 2013) (same); *Durham v. Cont'l Cent. Credit, Inc.*, No. 07-CV-1763 BTM(WMC), 2011 WL 2173769, at *2 (S.D. Cal. June 2, 2011) (same).

Here, the distribution of this award to the NCLC will benefit consumers in Massachusetts by way of the organization's consumer advocacy. In addition, the NCLC's Massachusetts Economic Justice Project works "with local advocates helping low-income consumers and seniors facing difficulties in the marketplace." NCLC Massachusetts, https://www.nclc.org/special-projects/massachusetts.html (last visited Oct. 16, 2021). The Parties contend that the NCLC is an appropriate *cy pres* designee in a claim involving claims of false advertising of a consumable product to consumers.

### ii. Mothers Against Drunk Driving

MADD's mission is to "end drunk driving, help fight drugged driving, support the victims of these violent crimes, and prevent underage drinking." *See* MADD, https://www.madd.org/ (last visited Oct. 16, 2021). MADD educates consumers on the dangers of failing to consume alcohol responsibly. MADD works in various areas seeking to promote safe and responsible habits, including teen drinking prevention and drunk driving prevention. MADD also advocates to improve messaging in alcohol advertising, marketing, and labeling.

MADD is an appropriate recipient for a *cy pres* award in this case. This case concerns the advertising, marketing, and labeling of alcoholic beverages for personal consumption. This award will benefit consumers in Massachusetts by promoting a program that seeks to ensure safe and responsible drinking habits; and further, aims to educate consumers on responsible drinking.

**B.      The Court Should Approve the Monetary Terms of the Settlement[2]**

With respect to the matter of Plaintiff's Fee Application, during the final approval hearing, the Court inquired about the proportionality of the attorneys' fees requested versus the overall relief being paid for the benefit of the Settlement Class. *See e.g.*, Transcript of Oct. 7, 2021 Hearing ("Tr.") at 24:8–17. In doing so, the Court looked to Judge Young's analysis of this matter in *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 402 (D. Mass. 2008).

In *TJX*, the court addressed the issue of proportionality in claims-made cases. *Id.* at 403. In looking at the terms of proposed settlement, the court concluded that the reasonableness of the fee award may be judged in comparison to the benefits actually claimed by the class. *Id.* After a thorough discussion of the approaches suggested by other legal authorities and several decisions from other circuits, the court nevertheless awarded the full fees requested of $6,500,000.00. The court's award was based upon an upward multiplier on counsel's lodestar of 1.97, despite the fact that only 14,496 of the "approximately 454,500 unrecepted return customers—slightly more than three percent—claimed the credit monitoring benefit." *Id.* at 406.

Here, the proposed terms of the Supplemental Agreement provide an additional concrete benefit beyond the claims to be paid to qualifying Settlement Class Members. That is, per the terms of the Supplemental Agreement, Defendants shall issue a payment of at least $350,000.00 to the above *cy pres* designees. As of October 19, 2021, the Claims Administrator had received claims in the total amount of $176,808.00. Thus, although the Claims Period is still open, at least **$526,808.00** would be paid to benefit the Class.

---

[2] In joining and submitting this memorandum, Defendants take no position on the reasonableness of Plaintiff's request for attorneys' fees. Defendants merely advocate that the settlement should be approved, and provide this supplemental information, as requested by the Court, to aid in its decision.

This amount reflects the amount of monetary claims made as of the final approval hearing, as well as the monetary relief issued to benefit the Settlement Class. This benefit shall likely increase, as the Claims Period is open until October 26, 2021. When compared to the application of attorneys' fees in the amount of **$972,847.97** (the requested total award includes a request for the reimbursement of actual costs in the amount of $177,152.03, for a total amount of $1,150,000.00), the proposed class benefit amounts to more than half of the requested fees. Accordingly, the ratio between relief to benefit the Class and attorneys' fees has improved dramatically since the Final Fairness Hearing because (i) the benefit to the Class has substantially increased through the *cy pres* allocation, (ii) the request for attorneys' fees has been substantially reduced, and (iii) the number and amount of claims made by Settlement Class Members have also increased.

Thus, unlike the predicament faced by the *TJX* court, where the claims-made process did not convey any additional overall benefit to the class, the proposed settlement here provides a significant additional monetary benefit to be distributed by the Defendants to benefit the Settlement Class. *See e.g.*, *Hughes v. Kore of Indiana Enter., Inc.,* 731 F.3d 672, 676 (7th Cir. 2013) ("Payment of $10,000 [on behalf of a class] to a charity whose mission coincided with, or at least overlapped, the interest of the class (such as a foundation concerned with consumer protection) would amplify the effect of the modest damages in protecting consumers. A foundation that receives $10,000 can use the money to do something to minimize violations of the Electronic Funds Transfer Act; as a practical matter, class members each given $3.57 cannot."); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *13 (N.D. Cal. Mar. 18, 2020) (finding *cy pres* award adequate).

### C. No Amicus is Necessary

Because the Parties have agreed to reduce the request for fees and distribute a *cy pres* award in this case, the Court need not appoint an amicus to further address these issues. *See* Transcript of Oct. 7, 2021 Hearing ("Tr.") at 45:5–9 ("But I think I should give you a chance to think about that and to think about whether there's anything you want to do to revise the settlement to address my concerns before I decide whether you appoint or invite amicus briefs and whether or not I should approve the settlement.").

Allowing the proposed Supplemental Agreement to the Settlement Agreement will also alleviate the need to determine the separate issue of amicus compensation, as discussed by this Court in *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 513 F. Supp. 3d 202, 208 (D. Mass. 2021) ("Ordinarily, an amicus curiae who participates in a proceeding by leave of court or by court appointment is not entitled to compensation . . . However, where the court appoints an amicus curiae who renders services which prove beneficial to a resolution of the questions presented, the court may properly award compensation and direct it to be paid by the party responsible for the situation which prompted the court to make the appointment.") (citing 4 Am. Jur. 2d Amicus Curiae § 12).

Instead, as suggested by the Court, in addition to the actual monetary relief being directly issued to eligible Settlement Class Members, at least $350,000.00 will be paid to two (2) adequate *cy pres* recipients.

### D. No Additional Notice is Necessary

Finally, as the Court indicated at the Oct. 7, 2021 Hearing, additional Notice to the Settlement Class is not required. *See* Tr. at 49:16–17 ("THE COURT: Yes. No, I don't have in mind you're going to give new notice."); 51:11–14 ("[I]f you agree to revisions to the settlement,

I think along the lines we've been discussing, they're not material from the perspective perhaps of the class. They wouldn't require new notice, in my view, at present . . .").

Because the compensation to the Settlement Class has not changed under the proposed revisions, no additional Notice is necessary. *See Trombley v. Bank of Am. Corp.*, No. 08-CV-456-JD, 2013 WL 5153503, at *6 (D.R.I. Sept. 12, 2013) (finding that no additional class notice was necessary when the compensation provided by the Revised Settlement Agreement was more beneficial to the class than the compensation offered by the original settlement agreement).

Here, the Parties merely propose to reduce Class Counsel's request for attorneys' fees and costs and agree that Defendants shall pay up to the initially-agreed upon amount of $1.5 million. The difference between the fees and costs that Defendants originally agreed to pay and the actual amount of fees and costs determined to be awarded will now be distributed as a *cy pres* award.

The Settlement Class Members are not affected by this amendment, and the Class Benefit (i.e., without proof of purchase, $0.50 per six-pack up to $10.00 per household, and with proof of purchase, $0.50 per six-pack up to $20.00 per household) has not changed.  The Settlement Class has already received Notice that the Court approved in its preliminary approval order.  *See* ECF No. 148 at 10.

Further, conducting a second Notice Program would substantially increase the administrative costs already expended in this case, *see Trombley*, 2013 WL 5153503, at *6, and require the re-notice of thousands of Settlement Class Members who have already submitted their claims.  For these reasons, no additional Notice is required.

### III.     CONCLUSION

For the reasons stated above, the Court should approve the proposed *cy pres* award, including the designated recipients, and grant final approval to the proposed Class Action Settlement.

Dated: October 19, 2021

Respectfully,

| | |
|---|---|
| */s/ Kevin J. McCullough* | */s/ Jacob J. Struck* |
| Kevin J. McCullough, Esq. (BBO #644480) | Jacob J. Struck (BBO# 680197) |
| Michael C. Forrest, Esq. (BBO #68140) | HUNTON ANDREWS KURTH LLP |
| FORREST, MAZOW, MCCULLOUGH, YASI & YASI, P.C. | 60 State Street, Suite 2400 |
| 2 Salem Green, Suite 2 | Boston, MA 02109 |
| Salem, MA 01970 | 617-648-2751 |
| (617) 231-7829 | JStruck@HuntonAK.com |
| mforrest@forrestlamothe.com | |
| kmccullough@forrestlamothe.com | Leslie Kostyshak (*Pro Hac Vice*) |
| | HUNTON ANDREWS KURTH LLP |
| *Counsel for Plaintiff* | 2200 Pennsylvania Avenue, NW |
| | Washington, DC 20037 |
| | 202-778-2268 |
| | LKostyshak@HuntonAK.com |
| | |
| | Samuel A. Danon (*Pro Hac Vice*) |
| | HUNTON ANDREWS KURTH LLP |
| | Wells Fargo Center, Suite 2400 |
| | Miami, FL 33131 |
| | 305-810-2500 |
| | SDanon@HuntonAK.com |
| | |
| | Euripides D. Dalmanieras (BBO# 650985) |
| | FOLEY HOAG LLP |
| | Seaport World Trade Center West |
| | 155 Seaport Boulevard |
| | Boston, MA  02210-2600 |
| | 617-832-1000 |
| | EDalmani@foleyhoag.com |
| | |
| | *Counsel for Defendants* |

11

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2, I, Jacob J. Struck, hereby certify that this document filed through the ECF System on October 19, 2021 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Jacob J. Struck*
Jacob J. Struck